IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHAEL SCOTT MILLER,<br><br>Plaintiff,<br><br>vs.<br><br>ELI DAVIDSON, BRENT LOTTMAN, and MATT KADAVY,<br><br>Defendants. | 4:21CV3092<br><br>**MEMORANDUM AND ORDER** |

  Plaintiff, a state prisoner currently being held at the Omaha Correctional Center, filed this action on May 4, 2021, and subsequently was granted leave to proceed in forma pauperis. The court conducted an initial review of Plaintiff's Complaint (Filing 1) and, in a Memorandum and Order (Filing 19) entered on July 1, 2021, determined there was a misjoinder of parties under Federal Rule of Civil Procedure 20. The court also found there was a significant failure to comply with the simplified pleading requirements of Rule 8. On the court's own motion, Plaintiff was given 30 days to file an amended, superseding complaint. In response, Plaintiff filed an Amended Complaint (Filing 20) and also a Supplement (Filing 22) before the pleading deadline. Accordingly, the court will now conduct an initial review of the Amended Complaint and Supplement to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

I. STANDARDS ON INITIAL REVIEW

  The court is required to conduct an initial review of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C.A. § 1915A(a). On such initial review, the court must dismiss the complaint if it: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.A. § 1915A(b). *See*

*also* 28 U.S.C. § 1915(e)(2)(B) (requiring dismissal of in forma pauperis complaints "at any time" on the same grounds as § 1915A(b)).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004).

## II. SUMMARY OF AMENDED COMPLAINT

Plaintiff states this is an action brought under 42 U.S.C. § 1983. He is suing three Defendants, in their individual and official capacities: (1) Brent Lottman, Sheriff of Nemaha County, Nebraska; (2) Matt Kadavy, Nemaha County Jail Administrator and Deputy Sheriff; and (3) Eli Davidson, Nemaha County Deputy Sheriff. (Filing 20, ¶¶ 2-5.) Plaintiff complains about various events that transpired between April 6 and October 20, 2020. (Filing 20, p. 1.)

Plaintiff first complains he was interrogated by Davidson on April 6 while he was suffering from hypothermia and low blood sugar. (Filing 20, ¶ 7.)

Second, Plaintiff complains booking photos of himself and his co-defendant, Josh Brown, were retaken 2 weeks later because of how bad they looked at intake. (Filing 20, ¶¶ 8-9).

Third, Plaintiff complains he was called up to the booking room on April 24 to take a phone call from his attorney, and the call was recorded without Plaintiff's knowledge. (Filing 20, ¶ 10.) Plaintiff alleges an inmate handbook prepared by Lottman and Kadavy falsely states that such calls are not recorded. (Filing 20, ¶ 13.) Plaintiff alleges that when he learned of the recording through his co-defendant, who was warned by his own attorney that all phone lines in the jail were recorded, this chilled him from wanting to have any further conversations with his attorney, and he became distrustful of his attorney. (Filing 20, ¶ 15-17.)

Fourth, Plaintiff further complains that Davidson was in the booking room while Plaintiff was having the phone conversation with his attorney, and Davidson was tapping the trigger of his taser to intimidate Plaintiff. (Filing 20, ¶ 11.)

Fifth, Plaintiff complains Defendants interfered with his attempts to obtain a video recording of the booking room on April 24 to prove his allegation about Davidson's intimidation tactics. Plaintiff alleges he prepared a discovery motion for filing in his criminal case, but Lottman and Kadavy refused his request to have the motion notarized. Presumably, the motion was not filed. (Filing 20, ¶¶ 18-20.) Plaintiff further alleges that by the time of his next court appearance on September 9, the video had been deleted. (Filing 20, ¶ 24.) However, the judge did direct that Plaintiff be provided a copy of the recorded phone conversation. (Filing 20, ¶ 25.)

Sixth, Plaintiff alleges that Lottman lied to the State Ombudsman by denying that the April 24 telephone call was recorded. (Filing 20, ¶¶ 14, 23, 25.)

Seventh, Plaintiff complains that Defendants also refused his request for notarization of a speedy-trial motion he prepared for filing in Missouri in connection with criminal charges pending against him in that state; Plaintiff alleges he filed the motion, but he assumes it was not considered because it was not notarized. (Filing 20, ¶ 21.)

3

Eighth, Plaintiff complains he was denied access to a fax machine after faxing a dozen letters to the court about Davidson's intimidation. (Filing 20, ¶ 26.)

Ninth, Plaintiff alleges Lottman and Kadavy also intentionally interfered with his medical treatment by scheduling his MRI at the same time as the September 9 court hearing, forcing Plaintiff to forego the MRI. (Filing 20, ¶¶ 29-30.) Plaintiff alleges Kadavy ignored his requests to reschedule the MRI, and, after Plaintiff was moved to the Otoe County jail, denied his request. (Filing 20, ¶¶ 31-32, 42.)

Tenth, Plaintiff alleges he was made to sleep in his own feces after he had an accidental bowel movement, and was denied a shower. (Filing 20, ¶ 33.) Plaintiff further alleges Lottman and Kadavy manipulated the records to cover-up that Plaintiff was in lock-down for 24 hours without a shower, in violation of jail standards. (Filing 20, ¶ 34.)

Eleventh, Plaintiff alleges Lottman and Kadavy moved him to a security cell for 24 hours after he was crying out for medical treatment following a slip-and-fall; Plaintiff alleges they ignored his requests for medical treatment and transportation to a hospital. (Filing 20, ¶ 35.)

Twelfth, Plaintiff complains his glasses were causing migraine headaches, and Kadavy denied his request for an eye exam. (Filing 20, ¶¶ 36, 38.) Plaintiff alleges he also made several other requests for an eye exam, and speculates they were not forwarded to medical. (Filing 20, ¶¶ 36-37.)

Thirteenth, Plaintiff complains his requests for a blood draw to check his high level of triglycerides were repeatedly denied by Kadavy. (Filing 20, ¶¶ 39-40, 42.)

### III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

4

A. Claims One and Two[1]

Regarding Plaintiff's first claim, that Davidson subjected him to an improper interrogation, the Supreme Court has held that "mere coercion does not violate the text of the Self-Incrimination Clause [of the Fifth Amendment][2] absent use of the compelled statements in a criminal case against the witness." *Chavez v. Martinez*, 538 U.S. 760, 769 (2003) (plurality opinion); *see Entzi v. Redmann*, 485 F.3d 998, 1002 (8th Cir. 2007) ("[T]he general rule is that a person has no claim for civil liability based on the Fifth Amendment's guarantee against compelled self-incrimination unless compelled statements are admitted against him in a criminal case."). This "do[es] not mean that police torture or other abuse that results in a confession is constitutionally permissible so long as the statements are not used at trial; it simply means that the Fourteenth Amendment's Due Process Clause, rather than the Fifth Amendment's Self-Incrimination Clause, would govern the inquiry in those cases and provide relief in appropriate circumstances. *Chavez*, 538 U S., at 773 (footnote omitted); *see also id.* at 779 (Souter, J., concurring) (stating that where claim is based on outrageous conduct of police in questioning of suspect, "[t]hat claim, ... if it is to be recognized as a constitutional one that may be raised in an action under § 1983, must sound in substantive due process"). "Convictions based on evidence obtained by methods that are 'so brutal and so offensive to human dignity' that they 'shoc[k] the conscience' violate the Due Process Clause." *Id.*, at 774 (quoting *Rochin v. California,* 342 U.S. 165, 172, 174 (1952). Plaintiff's allegation that he was interrogated while suffering from hypothermia and low blood sugar does not rise to the "conscience shocking" level. Indeed, Plaintiff alleges the interrogation ended when he asserted his *Miranda* rights, and it is not alleged that he made any incriminating statement. This claim is not aided by Plaintiff's further allegation that his booking photo was retaken because, again, no resulting injury is alleged, and the action is not "conscience shocking."

---

[1] The claim numbers used in this Discussion correspond to the numbering used by the court in its Summary of Amended Complaint. The claims are not separately stated or numbered in the pleading itself.

[2] The Fifth Amendment's Self-Incrimination Clause is made applicable to the States by the Fourteenth Amendment. *Chavez v. Martinez*, 538 U.S. 760, 766 (2003); *Malloy v. Hogan,* 378 U.S. 1 (1964).

The court also takes judicial notice that on December 2, 2020, Plaintiff pled guilty to criminal charges filed in the District Court of Nemaha County, Nebraska, Case No. CR 20-19, and he subsequently was sentenced to the Nebraska Department of Corrections.[3] Plaintiff presumably is serving his sentences at this time. He does not allege that the convictions have been invalidated.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the United States Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.*, at 486-87 (footnote omitted). "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*, at 487.

Accordingly it has been held that a prerequisite for seeking damages under section 1983 for a conviction resulting from a guilty plea is the overturning of that conviction. *Kelly v. City of Omaha*, No. 14-3446, 2016 WL 660117 (8th Cir. Feb. 18, 2016); *see Longs v. McManaman*, No. 4:18CV3161, 2019 WL 2717714, at *5 (D. Neb. June 28, 2019) (prisoner's claims that he was deprived of constitutional rights in the course of state criminal proceedings, which concluded with a guilty plea, were *Heck*-barred); *Nattress v. Lancaster Cty.*, No. 4:14CV3161, 2015 WL 4249493, at *5 (D. Neb. July 13, 2015) (prisoner's claim that his plea was coerced was *Heck*-barred); *Boyce v. City of Omaha*, No. 8:13CV73, 2013 WL 1742717, at *2 (D. Neb. Apr. 23, 2013) (claims premised on a coerced guilty plea are *Heck*-barred because they challenge the validity of the plaintiff's conviction).

---

[3] The court may take judicial notice of judicial opinions and public records and include them in its consideration of a case. *Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005). Nebraska's judicial records may be retrieved online through the JUSTICE website, https://www.nebraska.gov/justice.

*Heck* also applies to claims for declaratory and injunctive relief. *See Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996) (indicating that, under *Heck*, court disregards form of relief sought and instead looks to essence of plaintiff's claims); *Harvey v. Horan*, 278 F.3d 370, 375 (4th Cir. 2002), *abrogated on other grounds by Skinner v. Switzer*, 562 U.S. 521 (2011) (*Heck* applies to claims for damages, as well as to claims for injunctive relief that necessarily would imply the invalidity of plaintiff's conviction); *Lawson v. Engleman*, 67 Fed. App'x 524, 526 n.2 (10th Cir. 2003) (*Heck* applied to plaintiff's claims for monetary, declaratory, and injunctive relief; *Heck* should apply when the concerns underlying *Heck* exist).

Moreover, Plaintiff's claims for declaratory and injunctive relief are moot because he is no longer a prisoner at the Nemaha County Jail. *See, e.g.*, *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (per curiam) (holding that as to an inmate seeking injunctive relief based on a particular facility's policies, his claim became moot upon his transfer out of that facility "[b]ecause [he] is no longer subject to the policies that he challenges, [and] there is no live case or controversy"); *Hickman v. State of Mo.*, 144 F.3d 1141, 1142 (8th Cir. 1998) ("Because plaintiffs have been released on parole and are no longer confined at [the defendant correctional center], their claims [of ADA violations] are moot."); *Watts v. Brewer*, 588 F.2d 646, 648 (8th Cir. 1978) (holding that as to an inmate's claims regarding prison conditions, "[h]is release has mooted his claims for declaratory and injunctive relief").

### B. Claims Three and Four

Regarding Plaintiff's phone conversation with his attorney on April 24, 2020, it is clear "that an accused does not enjoy the effective aid of counsel if he is denied the right of private consultation with him." *Mastrian v. McManus*, 554 F.2d 813, 821 (8th Cir. 1977) (quoting *Coplon v. United States*, 191 F.2d 749, 757 (D.C. Cir 1951)). But this truism does not mean that Plaintiff has a viable § 1983 damage claim. While Plaintiff alleges that the conversation was secretly recorded, and took place in front of a deputy who tried to intimidate Plaintiff, it is not alleged that Plaintiff suffered any actual injury.

> To establish a Sixth Amendment violation, [Plaintiff] must show two things: first, that defendants knowingly intruded into his attorney-client relationship; and second, that the intrusion demonstrably prejudiced [Plaintiff], or created a substantial threat of prejudice. *See*

7

> *United States v. Singer,* 785 F.2d 228, 234 (8th Cir. 1986); *see also, Weatherford v. Bursey,* 429 U.S. 545, 558 (1977); *United States v. Solomon,* 679 F.2d 1246, 1250 & n.8 (8th Cir.1982); *Mastrian v. McManus,* 554 F.2d 813, 821 (8th Cir. 1977). A criminal defendant is prejudiced if, for example, the proceedings leading to his conviction were adversely affected by the intrusion, or the representation he received was adversely affected. *See United States v. Kriens,* 270 F.3d 597, 603 (8th Cir. 2001). But there is generally no prejudice where the substance of the communications with counsel are not passed on to prosecutors. *See Weatherford,* 429 U.S. at 558.[4]

*Williams v. Raynor Rensch & Pfieffer*, No. 8:11-CV-446, 2015 WL 3764838, at *2 (D. Neb. June 16, 2015); *Mastrian*, 554 F.2d at 821 ("Evidence that a party monitored the accused's conversations with his attorney does not necessarily establish a Sixth Amendment violation. Rather, the accused must show, in addition, that the substance of the overheard conversation was of some benefit to enforcement officials. Absent this proof, a monitoring allegation must be denied.") (footnote omitted); *see also Maddox v. Davis*, 164 F. App'x 559, 560 (8th Cir. 2005) (affirming dismissal of Fifth Amendment claim where Plaintiff did not allege that statements he made during surreptitiously recorded telephone conversation had been used against him in a criminal trial).

Because Plaintiff does not allege that the recorded or overheard conversation was of some benefit to the prosecution, no plausible Sixth Amendment claim is stated. And, as with the alleged Fifth Amendment violations, any claim that Plaintiff pleaded guilty to the criminal charges because of Defendants' alleged interference with the attorney-client relationship is *Heck*-barred.

Plaintiff alleges Defendants' actions "chilled" his ability to speak with his attorney, and he invokes the First Amendment's protection of free speech.[5] This claim likewise fails for lack of any actual injury. Under Supreme Court precedent, a

---

[4] The Sixth Amendment's right to adequate assistance of counsel is made applicable to the States through the Fourteenth Amendment. *Chavez v. Martinez*, 538 U.S. 760, 766 (2003).

[5] The Fourteenth Amendment makes the First Amendment's Free Speech Clause applicable against the States. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928,(2019).

8

claim of a chilling effect, in and of itself, is not sufficient to establish an actual injury. *See Laird v. Tatum,* 408 U.S. 1, 13-14 (1972); *see also Eckles v. City of Corydon,* 341 F.3d 762, 767 (8th Cir.2003) (recognizing that allegations of a "subjective chill" fail to establish standing and that there must be "a claim of specific present objective harm or a threat of specific future harm") (quotations omitted). Plaintiff's First Amendment claim therefore fails as a matter of law. *See, e.g.*, *Clemons v. Lombardi*, No. 4:13CV458 CDP, 2013 WL 3489870, at *2-3 (E.D. Mo. July 10, 2013) (dismissing prisoner's § 1983 claim that monitoring and recording of his privileged telephone conversations infringed upon his First Amendment rights because his and his attorneys' speech regarding his pending habeas case had been chilled).

Plaintiff also claims his Fourth Amendment rights were violated when the telephone call was recorded and Davidson was eavesdropping on the conversation. In general, "the State's intrusion into a particular area ... cannot result in a Fourth Amendment violation unless the area is one in which there is a 'constitutionally protected reasonable expectation of privacy.'" *New York v. Class,* 475 U.S. 106, 112 (1986) (quoting *Katz v. United States,* 389 U.S. 347, 360 (1967) (Harlan, J., concurring)).[6]

The Fourth Amendment extends to the recording of oral statements where the person has legitimate expectation of privacy. *Katz,* 389 U.S. at 353. However, where a prison provides notice that calls may be monitored, there is no reasonable expectation of privacy in such communications. *United States v. Sababu,* 891 F.2d 1308, 1329 (7th Cir.1989). In this context, the curtailment of the rights of "pretrial detainees is the same as for convicted inmates." *Tittle v. Carver*, No. 06-C-938, 2008 WL 4425882, at *8 (E.D. Wis. Sept. 24, 2008) (quoting *United States v. Van Poyck,* 77 F.3d 285, 291 (9th Cir. 1996)).

Although "[t]he expectation of privacy shared by ... pretrial detainees is of a 'diminished scope,'" *Arnzen v. Palmer,* 713 F.3d 369, 372 (8th Cir. 2013) (quoting *Bell,* 441 U.S. at 557), Plaintiff alleges an inmate handbook prepared by Lottman and Kadavy specified that incoming calls from local attorneys were not recorded.

---

[6] The Fourth Amendment's right of privacy is enforceable against the States through the Due Process Clause of the Fourteenth Amendment. *Berger v. State of N.Y.*, 388 U.S. 41, 53(1967).

9

Liberally construing this and other allegations of Plaintiff's Amended Complaint and Supplement, the court finds the secret recording of the April 24 phone call could constitute a violation of Plaintiff's Fourth Amendment rights. *Cf. United States v. Van Poyck*, 77 F.3d 285, 290-91 (9th Cir. 1996) (pretrial detainee had no reasonable expectation of privacy in outbound telephone call, and effectively consented to recording where posted signs and inmate manual warned of recording). On the other hand, Plaintiff cannot claim to have had a reasonable expectation that Davidson would not be able to overhear his side of the conversation in the booking room. *See, e.g., Tittle v. Carver*, No. 06-C-938, 2008 WL 4425882, at *8 (E.D. Wis. Sept. 24, 2008) (pretrial detainee had no reasonable expectation of privacy regarding telephone call he made from jail booking room in the presence of an officer).

To recover compensatory damages, Plaintiff must plead and prove an "actual, compensable injury." *Heck*, 512 U.S. at 487 n. 7; *see Waters v. Madson*, 921 F.3d 725, 740 (8th Cir. 2019) (affirming district court's dismissal of § 1983 claim where plaintiffs failed to allege that any damages stemmed from unlawful search of their vehicle's trunk). The facts alleged in the Amended Complaint do not show an actual, compensable injury, but Plaintiff may be able to recover nominal damages (of $1.00) based on the secret recording. *See Waters*, 921 F.3d at 740 n. 8; *Garrett v. Clarke*, 147 F.3d 745, 747 (8th Cir. 1998) ("If [plaintiff] proves [his Fourth Amendment search] claim, he is entitled to a finding of liability and nominal damages even if he cannot prove actual damages."). With an appropriate showing, punitive damages may also be awarded even though no actual damages are proved. *See Salitros v. Chrysler Corp.*, 306 F.3d 562, 574 (8th Cir. 2002); *Goodwin v. Circuit Court of St. Louis Cty.*, 729 F.2d 541, 548 (8th Cir. 1984). Punitive damages are appropriate in a § 1983 case when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *Washington v. Denney*, 900 F.3d 549, 564 (8th Cir. 2018).

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality (or other local government unit) can be liable under 42 U.S.C. § 1983 if an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. "To establish municipal liability, a plaintiff must first show that one of the municipality's officers violated her federal right." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Sanders v. City of*

*Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007)). "If that element is satisfied, then a plaintiff must establish the requisite degree of fault on the part of the municipality and a causal link between municipal policy and the alleged violation." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989)).

To prevail on an official-capacity claim, Plaintiff must show that the constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016). "Official policy involves 'a deliberate choice to follow a course of action ... made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). "Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating '(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation.'" *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699-700). A municipal liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018).

Plaintiff alleges that the "Sheriff's Department" or "Sheriff's Office" was responsible for the secret recording (Filing 20, p. 2, ¶¶ 10, 13, 14), but does not allege that any individual Defendant was directly involved in recording the call. (It is only alleged that Lottman and Kadavy prepared the inmate handbook, and that Lottman later lied to the Ombudsman.) Thus, no actionable claim is stated against Defendants in their individual capacities. Liberally construing Plaintiff's allegations, however, a plausible official-capacity claim is stated against Sheriff Lottman. In Nebraska, a county sheriff exercises final policymaking authority for the county in the area of law enforcement. *Dean v. Cty. of Gage*, 807 F.3d 931, 941-42 (8th Cir. 2015); *see*

*Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018) (county sheriff, as final policymaker, allegedly condoned use of excessive force against fleeing arrestees).

### C. Claims Five Through Eight

The Constitution guarantees prisoners a right to access the courts. *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007); *see Murray v. Giarratano*, 492 U.S. 1, 11 n. 6 (1989) ("The prisoner's right of access has been described as a consequence of the right to due process of law and as an aspect of equal protection." (internal citations omitted)); *see also Christopher v. Harbury*, 536 U.S. 403, 415 n. 12 (2002) (noting, outside of the context of prisons, the right to access the courts is guaranteed by an "amalgam" of the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses).

To prove a violation of the right of meaningful access to the courts, Plaintiff must establish that Defendants did not provide him with an opportunity to litigate his claim in "a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008) (citation omitted). "To prove actual injury, [Plaintiff] must 'demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.'" *Id.* (quoting *Lewis v. Casey*, 518 U.S. 343, 353 (1996)). Plaintiff's allegations again fail to show any actual injury.

### D. Claims Nine Through Thirteen

Plaintiff complains about conditions of confinement at the Nemaha County Jail. Although Plaintiff relies on the Eighth Amendment's Cruel and Unusual Punishments Clause, this provision "has no application" to pretrial detainees. *See Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). However, the Fourteenth Amendment gives state pretrial detainees rights which are "*at least as great* as the Eighth Amendment protections available to a convicted prisoner." *Id.* (emphasis in original; quoting *City of Revere*, 463 U.S. at 244); (*Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014)). "Due process requires that a pretrial detainee not be punished." *Walton*, 752 F.3d at 1117 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)).

The Eighth Circuit has determined that a conditions-of-confinement claim brought by a pretrial detainee should be analyzed using an objective "punishment" standard, rather than a subjective "deliberate indifference" standard. *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902 (8th Cir. 2020). "However, not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' The Government has legitimate interests that stem from its need to manage the facility in which the individual is detained. Furthermore, there is a *de minimis* level of imposition with which the Constitution is not concerned." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (citations omitted).

Plaintiff alleges that on one occasion he was made to sleep in soiled clothing and was denied a shower. With respect to sanitation, the Eighth Circuit focuses on "the length of exposure to unsanitary conditions and how unsanitary the conditions were." *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). In *Smith*, a pretrial detainee alleged he was subjected to an overflowed toilet in his isolation cell for four days, and was made to endure the stench of his own feces and urine for those four days. Noting that the plaintiff "did not allege that he was exposed to disease or suffered any other consequences of the exposure," *Smith*, 87 F.3d at 268, and that "the length of time a prisoner is subjected to harsh conditions is a critical factor in our analysis," *id.* at 269, the Eighth Circuit held there was no constitutional violation. Based on this precedent, Plaintiff's conditions-of-confinement claim necessarily fails. *See also Guerry v. Frakes*, No. 4:17CV3047, 2018 WL 1702391, at *12-13 (D. Neb. Apr. 6, 2018) (no constitutional violation where prisoner was forced to eat and sleep in cell exposed to burning plastic, oily water contaminated with blood, human waste, and sewage for four or more days following prison riot), *aff'd*, 748 F. App'x 719 (8th Cir. 2019); *Bohlke v. Wagner*, No. 8:04CV506, 2006 WL 267176, at *2 (D. Neb. Feb. 2, 2006) ("[W]hile the [jail] conditions described by the plaintiff were objectionable, the plaintiff was not exposed to them for a long enough period to support a claim under the Eighth Amendment or the Due Process Clause."); *Conn v. Novak*, No. 8:04CV54, 2005 WL 2044922, at *2-3 (D. Neb. Aug. 25, 2005) (same).

Plaintiff alleges he was not allowed to shower for 24 hours, in violation of jail standards, but "a violation of jail standards does not equate with a violation of the Constitution." *Nelson v. Hjorth*, No. 8:18CV88, 2018 WL 2050571, at *4 (D. Neb.

13

May 2, 2018) (quoting *Henderson v. Greeley*, No. 6:13-CV-06137, 2015 WL 1280312, at *2 (W.D. Ark. Mar. 20, 2015)). "Jail standards, although helpful and relevant in some cases, do not represent minimum constitutional standards." *Grayson v. Ross*, 454 F.3d 802, 812 (8th Cir. 2006) (quoting *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991) (per curiam)).

Plaintiff also complains he was moved to a security cell for 24 hours rather than being taken to a hospital. Again, this was not "punishment" in the constitutional sense.

A pretrial detainee's claim of inadequate medical care is analyzed using the same "deliberate indifference" standard that applies to convicted prisoners. *See generally Karsjens v. Lourey*, 988 F.3d 1047, 1053 (8th Cir. 2021); *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). "In a deprivation of medical care case, the inmate must show (1) an objectively serious medical need; and (2) the defendants actually knew of the medical need but were deliberately indifferent to it." *East v. Minnehaha Cty.*, 986 F.3d 816, 820 (8th Cir. 2021) (quoting *Jones v. Minn. Dep't. of Corrs.*, 512 F.3d 478, 481 (8th Cir. 2008)). Negligence is not enough. *Id.* "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotation and citation omitted).

While Plaintiff complains he was not taken the hospital following a slip-and-fall injury, was not rescheduled for an MRI, and did not have blood drawn to check on his triglyceride levels, no actual injury is alleged. As is the case with all Eighth Amendment claims, a prisoner must suffer some actual injury in order to receive compensation. This injury must be greater than *de minimis. Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

Without any facts showing that the lack of medical evaluations or testing procedures caused him any harm, Plaintiff has failed to state a claim upon which relief may be granted. *See, e.g.*, *Bartunek v. Hall Cty.*, No. 8:18CV489, 2020 WL 1441853, at *14 (D. Neb. Mar. 24, 2020) ("Plaintiff's desire for a particular form of treatment and routine preventative examinations is not the proper basis for a constitutional claim."), *aff'd*, 828 F. App'x 340 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 1709 (2021); *Yanga v. Nebraska Dep't Corr. Servs.*, No. 8:19CV420, 2020 WL

4784723, at *5 (D. Neb. Aug. 18, 2020) (no actionable claim stated where plaintiff failed to allege he was harmed by prison officials' delay in ordering x-rays after plaintiff was attacked by another inmate). It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted).

The final claim to consider is Kadavy's denial of Plaintiff's requests for an eye exam. Unlike Plaintiff's other requests for medical treatment, it is alleged that Plaintiff suffered an actual injury because his eyeglasses were causing migraine headaches. Plaintiff alleges he showed Kadavy old prison records documenting he was legally blind, and claims Kadavy enjoyed seeing him suffer with headaches. This is sufficient to state a claim upon which relief may be granted against Kadavy in his individual capacity. *Cf. Muhammad v. King*, 21 F.3d 432 (8th Cir. 1994) (prisoner could not prevail on Eighth Amendment claim where, even though a delay existed in supplying him eyeglasses, "he did not prove the delay created an acute or escalating situation."). However, no plausible official-capacity claim is stated.

## IV. CONCLUSION

The court finds on initial review of Plaintiff's Amended Complaint that the matter may proceed to service of process on two claims: (1) a Fourth Amendment claim against Defendant Brent Lottman, in his official capacity as Sheriff of Nemaha County, for the secret recording of Plaintiff's telephone call; and (2) a Fourteenth Amendment claim against Defendant Matt Kadavy, in his individual capacity, for his deliberate indifference to Plaintiff's need for an eye exam. All other claims will be dismissed without prejudice.

IT IS THEREFORE ORDERED:

1. This matter will proceed to service of process against Defendant Brent Lottman, in his official capacity only, for allegedly violating Plaintiff's Fourth Amendment rights by establishing a policy of secretly recording calls between jail inmates and their attorneys.

2. This matter will also proceed to service of process against Defendant Matt Kadavy, in his individual capacity only, for allegedly violating Plaintiff's

    Fourteenth Amendment rights by his deliberate indifference to Plaintiff's need for an eye exam.

3. All other claims alleged in Plaintiff's Amended Complaint are dismissed without prejudice.

4. Defendant Brent Lottman, in his individual capacity, shall no longer be a party to this action.

5. Defendant Matt Kadavy, in his official capacity, shall no longer be a party to this action.

6. Defendant Eli Davidson, in his individual and official capacities, shall no longer be a party to this action.

7. For service of process on Defendant Brent Lottman, **in his official capacity**, the Clerk of the Court is directed to complete a summons form and a USM-285 form using this address, as specified in Neb. Rev. Stat. § 25-510.02(2) for service upon a county:[7]

    Nemaha County Clerk
    1824 N Street, Suite 201
    Auburn, NE  6830

8. For service of process on Defendant Matt Kadavy, **in his individual capacity**, the Clerk of the Court is directed to complete a summons form and a USM-285 form using this address:

---

[7] "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *McKay v. City of St. Louis*, 960 F.3d 1094, 1102 (8th Cir. 2020) (quoting *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010)). Neb. Rev. Stat. § 25-510.02(2) states: "Any county, city, or village of this state may be served by personal, residence, or certified mail service upon the chief executive officer, or clerk."

16

> Matt Kadavy
> Nemaha County Sheriff's Office
> 1805 N Street
> Auburn, NE  6830

9. The Clerk shall then forward these completed forms, together with two copies each of Plaintiff's Amended Complaint (Filing 20), Supplement (Filing 22), and this Memorandum and Order, to the Marshals Service for service upon said Defendants by certified mail or other authorized method. *See* Fed. R. Civ. P. 4(e).

10. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.[8]

11. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

---

[8] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory) ); Fed. R. Civ. P. 4(c)(3) (court must order that service be made by United States Marshal if plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915). *See, e.g.*, *Beyer v. Pulaski County Jail*, 589 Fed. App'x 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

12. The Clerk of the Court is directed to set a pro se case management deadline in this case with the following text: "December 9, 2021: Check for completion of service of summons."

13. The Clerk of the Court is directed to terminate Jeff Rowell as a Defendant on the court's docket sheet.

14. Plaintiff's motion for summons (Filing 23) is denied without prejudice.

Dated this 10th day of September 2021.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge